**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JAIME BERNAL GOMEZ, | : | PRISONER CIVIL RIGHTS |
| a.k.a. Jamie Bernal Gomez, | : | 42 U.S.C. § 1983 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DEPUTY SHERIFF L. JACKSON, | : | CIVIL ACTION NO. |
| SGT. R. L. BELL, Badge 944, | : | 1:18-CV-0963-MLB-CMS |
| Defendants. | : | |

**UNITED STATES MAGISTRATE JUDGE'S ORDER
AND FINAL REPORT AND RECOMMENDATION**

The matter is before the Court on Plaintiff's third amended complaint [Doc. 9],[1] Defendants' motion for summary judgment [Doc. 17], Plaintiff's motion for summary judgment [Doc. 19], and Defendants' response to Plaintiff's motion for summary judgment [Doc. 20].  The Clerk of Court is **DIRECTED** to adjust the Court's docket and to replace Sheriff L. Jackson, Defendant, with Deputy Sheriff L. Jackson, Defendant.  [See Doc. 9 at 3; Doc. 15 at 3].

---

[1] Plaintiffs third amended complaint [Doc. 9] is the operative complaint in this action.  [See Doc. 10 at 2 n.2].

I.  **Discussion**

Plaintiff has alleged that Sergeant R. L. Bell used excessive force against him during his April 13, 2016 arrest and that L. Jackson, Deputy Sheriff, used excessive force against him on May 2, 2016, when he was returned to the Gwinnett County Detention Center following surgery.   [See Doc. 9 at 1, 3-6; Doc. 10 at 4-6]. Defendants and Plaintiff have filed motions for summary judgment. [Docs. 17, 19].[2]

A.  **Legal Standard for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[2] In their brief in support of their motion for summary judgment, Defendants state that Bell has not been served, and that, "without waiving this defect, this matter is otherwise ripe for summary judgment." [Doc. 17-1 at 2].   Notwithstanding Defendants' assertion, any defense based on lack of service is waived.  Defendants did not file any Fed. R. Civ. P. 12(b) motion before they filed their responsive pleading, as amended, on December 2 and 12, 2019. [Docs. 15, 16].  Further, in their responsive pleading, as amended [id.], Defendants did not raise any defense under Fed. R. Civ. P. 12(b) based on insufficient service of process.  Accordingly, the defense is waived.  See Fed. R. Civ. P. 12(h)(1)(B).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The moving party's burden can be met by showing that the nonmoving party has not presented sufficient evidence in support of an essential element of its case upon which it bears the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

In deciding a motion for summary judgment, the court examines the "pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the non-moving party."  Furcron v. Mail Centers Plus, LLC, 843 F.3d 1295, 1303 (11th Cir. 2016) (quoting Hilburn v. Murata Elec. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999)).  In deciding a motion for summary judgment, the court does not determine the probative value of the evidence, i.e., "[i]ssues concerning the credibility of witnesses and weight of the evidence are questions of

fact which require resolution by the trier of fact." <u>Tippens v. Celotex Corp.</u>, 805 F.2d 949, 953 (11th Cir. 1986); <u>see also</u> <u>Lane v. Celotex Corp.</u>, 782 F.2d 1526, 1528 (11th Cir. 1986) ("[T]he district court must not resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence.").

"If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists." <u>Stein v. Ala. Sec'y of State</u>, 774 F.3d 689, 692 (11th Cir. 2014). "[T]he non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." <u>Irby v. Bittick</u>, 44 F.3d 949, 953 (11th Cir. 1995) (quoting <u>Chanel, Inc. v. Italian Activewear of Fla., Inc.</u>, 931 F.2d 1472, 1477 (11th Cir. 1991)). "A plaintiff's own 'conclusory assertions . . . in the absence of supporting evidence, are insufficient to withstand summary judgment.'" <u>Bouey v. Orange Cty. Serv. Unit</u>, 673 F. App'x 952, 954 (11th Cir. 2016) (quoting <u>Holifield v. Reno</u>, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997)).

"If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes

4

of the motion [for summary judgment.]" Fed. R. Civ. P. 56 (e)(2).  The Court's local rules (1) require the movant for summary judgment to provide a "separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried"; (2) require the respondent to provide individually numbered, concise responses to each of the movant's numbered material facts; and (3) state that the movant's facts will be deemed admitted absent proper refutation. LR 56.1(B)(1), (2)(a)(1)&(2), NDGa.

### B.    Plaintiff's Motion for Summary Judgment

Plaintiff has filed a motion for summary judgment, which he states is his opposition to Defendants' motion for summary judgment.  [Doc. 19 at 1].

Defendants argue that, to the extent Plaintiff's motion for summary judgment was intended as a response to Defendants' motion for summary judgment, Plaintiff's motion should be disregarded as untimely.[3]  [Doc. 20 at 1-4].  Defendants further

---

[3] As acknowledged by Defendants, Plaintiff's motion is dated within the twenty-one day time period for his response.  [Doc. 20 at 2 n.1].  The February 27, 2020 mailing date on Plaintiff's mailing envelope, without more, is insufficient to show that Plaintiff waited until February 27 to deliver his response to prison officials for mailing.  Accordingly, the Court considers Plaintiff's motion as a timely response to Defendants' motion for summary judgment.

argue that Plaintiff's statement of material fact, which lacks any citations to evidence as required by the Court's rules, should be disregarded and that Plaintiff's motion for summary judgment should be deemed insufficient under the Court's Local Rules.  [Id. at 6-7].

Plaintiff's motion is construed as a response to Defendants' motion for summary judgment and is deemed timely.  See supra n.3.  To the extent that Plaintiff intended to file an independent motion for summary judgment, his motion should be denied.  Denial is proper because Plaintiff has not met the initial responsibility of a movant to properly inform the Court, with record citations, of the undisputed facts that demonstrate he is entitled to judgment in his favor.  See Fed. R. Civ. P. 56(a), (c)(1)(A); LR 56.1(B)(1); May v. O'Gilvie-Carrington Ctr., Inc., No. 1:08-CV-3055-WBH-LTW, 2011 WL 13175976, at *3 (N.D. Ga. Jan. 26, 2011) ("Plaintiff has not filed a statement of undisputed material facts with his motion as required by the local rules. As a result, Plaintiff, who has the burden of proof at trial on each of his claims, has not met his initial burden of demonstrating that he can affirmatively establish each of the essential elements of his claims."), R. & R. adopted, 1:08-CV-3055-WBH, 2011 WL 13177657 (N.D. Ga. Feb. 28, 2011); Booth v. Aurora Loan Servs., LLC, No. 1:09-CV-2150-WSD, 2010 WL 11597194, at *4 (N.D. Ga. Nov. 8, 2010)

(denying the plaintiff's motion for summary judgment for failure to conform to the applicable rules of federal procedure, including failure to file a statement of undisputed material facts); <u>Lumbermen's Underwriting All. v. Blount Int'l, Inc.</u>, No. 3:05-CV-064-JTC, 2007 WL 7603709, at *3 (N.D. Ga. Feb. 5, 2007) ("[Movant], because of its failure to comply with the Local Rules, has not met its initial responsibility of informing the Court of the portions of the record, which it believes demonstrates that no question of material fact exists[.]").

### C.   **Defendants' Motion for Summary Judgment**

#### 1.   **Claims Against Bell**

##### a.   **Plaintiff's Sworn Allegations**

Plaintiff has alleged, under penalty of perjury, the following. [Doc. 9 at 7]. On April 13, 2016, after Plaintiff complied with Bell's instruction to place his hands behind his back, Bell shoved Plaintiff onto his police car, and the shove broke Plaintiff's chest and spine. [<u>Id.</u> at 3]. Plaintiff experienced severe pain and held his chest. When Bell falsely accused Plaintiff of refusing to comply, Plaintiff stated that he was not refusing to comply and that he thought Bell had broken his bones. Bell and another officer then tasered Plaintiff in the back, which caused Plaintiff to fall to the ground. Plaintiff was then handcuffed. Bell refused Plaintiff's request that he be

checked by a paramedic.  Bell grabbed Plaintiff, walked Plaintiff to the police vehicle, broke Plaintiff's right small finger, and placed Plaintiff in the vehicle.  Bell stated on the police radio that he had pushed Plaintiff "as hard as [he] could" and wanted to take him to a rail road track "to cut him in half."  [Id.].  Bell transported Plaintiff to jail.  [Id.].[4]

### b.   Defendants' Statement of Material Facts

### 9.

On April 13, 2016[,] Sergeant Bell arrived at Plaintiff's residence in response to a call from Plaintiff's mother-in-law, Patricia Delarosa-Diaz, stating that her son-in-law (Plaintiff) stabbed his two children and his wife, set their house on fire, and jumped out of a second story window.  [Bell Affidavit, ¶ 9, Gwinnett County Incident Reports, Exhibit A to Affidavit].  [5]

---

[4] The Court determined that Plaintiff had alleged facts that could show excessive force, depending on other facts that may come out and the application of the test for excessive force.  [See Docs. 10, 12].

[5] Plaintiff has submitted a copy of a January 2019 letter from his counsel in his criminal case, which states – "Based on my review of the discovery, including the statements of the witnesses, it appeared that the evidence overwhelmingly supported the charges that [Plaintiff] burned his house, killed his dog and stabbed his family." [Doc. 19 at 75].

10.

While en route, Sergeant Bell received an update stating that a neighbor had called 911 and reported a Hispanic male talking to himself loudly in front of a home near the Plaintiff's residence. [Id., and Bell Affidavit, ¶ 10].

11.

Upon arriving in the neighborhood where Plaintiff's home was located, Sergeant Bell found Plaintiff lying in the grass on his right hip, covered in blood, with a large kitchen knife – also covered in blood – against Plaintiff's leg. [Id., and Bell Affidavit ¶ 11].

12.

Sergeant Bell began shouting verbal commands to Plaintiff to lay flat on his stomach, but Plaintiff did not comply. [Id., and Bell Affidavit, ¶ 12].

13.

Two other officers arrived at that time, and Sergeant Bell told one of them to deploy the officer's Taser while the other officer handcuffed Plaintiff. Sergeant Bell provided lethal coverage with his firearm while the other officers arrested Plaintiff.

14.

After being incapacitated by the Taser and handcuffed, Plaintiff walked to the arresting officer's squad car, where the Taser probes were

9

removed from his body by the officer whose Taser was deployed. [Id., and Bell Affidavit, ¶ 13].[6]

15.

Sergeant Bell then responded to the incident location (Plaintiff's home) as the on-duty supervisor and had no further contact with Plaintiff. [Bell Affidavit, ¶ 15].

. . .

18.

The arresting officer, A. L. York, had one of the paramedics on scene render aid to Plaintiff for apparently self-inflicted lacerations. [Exhibit A].

19.

As the officer was removing Plaintiff from the car to be treated by the paramedic, Plaintiff attempted to flee and was taken to the ground where he was held by the arresting officer while the paramedic rendered aid. [Id.].

20.

The arresting officer then transported Plaintiff to Eastside Medical, where he was treated and given a tetanus shot before being cleared and released.  [Id.].

---

[6] Officer Roman's police report shows that he was the officer who deployed the taser, that he deployed both cartridges, one hitting Plaintiff's chest and the other hitting his left thigh, and that Roman later removed the taser prongs.  [Doc. 17-2 at 19].

21.

Upon release from Eastside Medical, Plaintiff was transported by Officer York to the Jail and released to deputies on duty without incident. [Id.].

22.

Plaintiff's claim that his back was broken as a result of being pushed into Sergeant Bell's car by Sergeant Bell is in conflict with all of the police and fire reports from the night of the arrest, none of which indicate that Plaintiff was ever touched by Sergeant Bell or placed in Sergeant Bell's car. [Bell Affidavit, ¶ 7].

23.

This fact is corroborated by the incident reports created at or near the time of the arrest. [Police Incident Reports, Exhibit A].

24.

Sergeant Bell has testified that he never touched Plaintiff. [Bell Affidavit ¶ 7].

25.

The police reports do indicate that Plaintiff jumped from a second story window after stabbing his family and setting his house on fire. These reports are further corroborated by the Fire Department's CAD reports made at the time of the incident. [Exhibits A and C].

26.

Plaintiff's medical records show the same. The relevant medical records are from professional medical personnel independent from the Jail. [Exhibit D].

27.

The jump from the home as the source of his injuries complained of here is corroborated by the numerous medical treatment reports which include statements made by Plaintiff as to the cause of his injuries. [Id.].

28.

The records contain statements from Plaintiff provided for treatment purposes. [Id.].

29.

The first record of [Plaintiff] visiting a hospital for his complaint of spine injury is from April 22, 2016[,] entitled "Initial Clinical Review," lists the history of illness as, ". . . patient apparently jumped from a 2nd story window approximately 10 days ago when he was involved in a domestic affair at home which included an argument with his significant other and children. . . . The patient was taken to another facility where he was evaluated by plain x-rays and was eventually cleared and sent to jail. . . . Now, the patient complains of chest and back pain and difficulty moving his right lower extremity."  Plaintiff was found to have fractured vertebrae and other spinal injuries and was scheduled for surgery.  [Id.]

30.

Approximately three months later on July 21, 2016 another medical document, entitled "Office Visit Note - *Final Report*,"

indicated that Plaintiff ". . . was in his usual state of health until April 2016 when he was involved in a domestic dispute during which he was pushed out of a 1.5 story window by his wife."  A few days later, a document entitled "EHC ER RPT *Preliminary Report*," indicated that Plaintiff ". . . was chased out of a second story window by his wife. . ." [Id.].

31.

Approximately four months later, in November 15, 2016 a document entitled "Important – Utilization Review from Emory University Hospital," indicated that Plaintiff ". . . was involved in a domestic dispute during which he was pushed out of a 1.5 story window by his wife." The medical notes are based on Plaintiff's own statements to medical staff. None of the police reports or officer interviews indicated that Plaintiff was chased or pushed out of a window by his wife. All of the officers indicated that their understanding was that Plaintiff jumped out of the window after the altercations.  [Exhibit A].

32.

Nevertheless, it is clear that none of the officers involved in the arrest caused the injuries Plaintiff lists in his amended complaint. [Doc. 9].

33.

Plaintiff has not sued any party that actually touched him. [Id., and Bell and Jackson Affidavits].

34.

No document gives any indication that Plaintiff's injury was caused by Sergeant Bell (or any officer) until Plaintiff's July 5, 2018 letters to the Police Department were received alleging that the injuries

to his back were caused by Sergeant Bell during his arrest. [Exhibit E, Plaintiffs letters to Police Department].[7]

35.

In response to the letters, the Gwinnett County Police Department conducted an internal affairs investigation. The internal investigation concluded that "There is no evidence to support excessive force was used during the arrest. There is no evidence to support that Sergeant Bell caused the injuries to [Plaintiff's] back.  Based on [Plaintiff's] own statements, the injuries were caused after exiting the house through a second story window. All relevant evidence has been reviewed and all leads have been exhausted."   [Exhibit F, Gwinnett County Police Department Interdepartmental Memorandum, Internal Affairs Division, July 10, 2018].

[Doc. 17-8 at 3-10].[8]

―――――――――――――

[7] It appears that Plaintiff sent the letters (received by the police department on July 5, 2018) on or around June 12, 2018, almost four months after Plaintiff filed this action.  [See Docs. 1, 17-6, 17-7].

[8] For clarity, the records show the following sequence of events:  (1) on the day of the incident, Plaintiff was taken to a medical facility where he received "plain x-rays and was eventually cleared and sent to jail" [Doc. 17-5 at 3]; (2) approximately one week later, before April 21/22, 2016, Plaintiff complained of weakness in his legs and chest/back pain [id. at 3, 7]; (3) on April 21 and/or 22, 2016, CT scans showed fractures of two vertebrae [id. at 3]; (4) on or about April 25, 2016, Plaintiff received surgery, a laminectomy [id. at 6]; (5) on May 2, 2016, Plaintiff was returned to jail; [Doc. 17-3 at 6-7]; (6) on May 15, 2016, Plaintiff was taken to North East Georgia Medical Center to have the surgical site washed out because Plaintiff had purulent drainage from his surgical site when his sutures were removed [17-5 at 7]; (7) on July 7, 2016, Plaintiff was seen at the Gwinnett Medical Center, and the CT

14

c.    **Defendants' Argument**

Defendants argue that Defendants' documented facts (including Bell's affidavit and various incident reports) show that Plaintiff's version of Bell's use of force is "almost entirely fabricated[.]"  [Doc. 17-1 at 2, 4-5, 14-17].  On Plaintiff's claim that Bell broke his right small finger, Defendants state that the medical records tell a different story.  [Id. at 13-14].  Defendants assert that none of the officers involved in Plaintiff's arrest caused his injuries; that Plaintiff fell from a two-story window, which caused his injuries; that Plaintiff's medical-records history (which Defendants attribute to Plaintiff's own statements to medical staff) connects Plaintiff's back injury to his fall; and that the medical records do not indicate that Plaintiff's back injury was caused by Bell or any other officer.  [Id. at 5-6, 12-13, 17].  Defendants also argue, based on their own version of Bell's actions, that Bell's use

––––––––––––––––––––

report showed a displacement of the metallic strut graft and the pedicle screws at the surgical site [id. at 8]; (8) on July 21, 2016, Plaintiff was seen by a physician at Emory Healthcare, who stated that the screws at Plaintiff's surgery site appeared to have pulled out [id.]; and (9) in November 2016, Plaintiff's diagnoses included hardware failure with kyphosis (abnormality of the spine causing excessive curvature), and he received additional surgery, which included removal of hardware and spinal fusion [id. at 15].

of force used was reasonable.  [Id. at 18].[9]  Defendants assert that they are entitled to

qualified immunity because Plaintiff fails to show that they violated clearly

established federal law.  [Id. at 21-24].

### d.      Plaintiff's Construed Response

Plaintiff has not responded to Defendants' statement of material facts but has

attached his own statement of material facts,[10] none of which are supported by any

citations to the record.  [Doc. 19-1 at 21-49].[11]  Otherwise, in his response, Plaintiff

---

[9] Defendants also contend that there is no evidence of deliberate indifference to a serious medical need.  [Doc. 17-1 at 19-21].  This issue is not addressed as Plaintiff was allowed to proceed only on his excessive force claims.

[10] Plaintiff states (1) that he saw the police vehicles and began yelling for them to stop, waving his arms in the air; (2) that Plaintiff walked toward Officer Roman's vehicle when it stopped; (3) that, when Bell asked him if he was okay, Plaintiff stated that he was fine; (4) that when Bell asked him what was going on, Plaintiff stated that his wife "started hitting and pushing him"; (5) that when Bell again asked him if he was okay, he again stated that he was fine but that he had a cut on his thumb; and (6) that Bell told Plaintiff he was going to search him.  [Doc. 19-1 at 23-24].  Plaintiff states that Bell had him stand with his legs apart and hands behind his back, "grabbed [his] hands together," and then "slightly pulled [him] back" and forcefully slammed him into the edge of the trunk of the patrol car.  [Id. at 24].  Plaintiff states that he yelled "ahhh" and held his chest, that Bell accused Plaintiff of "refusing" and took out his taser, that Plaintiff said he was not "refusing" and thought Bell had broken his bones, and that Plaintiff was then tasered and taken into custody.  [Id. at 24-26].

[11] Plaintiff also attached a motion for appointment of counsel [Doc. 19 at 18-

16

cites to (1) Plaintiff's exhibit C (Plaintiff's own drawings that attempt to depict the events), to show that Bell slammed Plaintiff into the trunk of Bell's vehicle and to (2) Plaintiff's exhibit J (a booking picture of Plaintiff), to show that Plaintiff was in pain.  [Doc. 19 at 3-6, 15, 55-58; Doc. 19-1 at 15].

### e.   **Law and Recommendation**

In  deciding  Defendants'  motion  for  summary  judgment,  the  Court  will consider the specific facts alleged in Plaintiff's sworn complaint.  See Marbury v. Warden, 936 F.3d 1227, 1232 (11th Cir. 2019) ("Where, as here, an inmate proceeded pro se in the district court, his summary judgment pleadings are construed liberally and 'specific facts' alleged in his sworn complaint can suffice to generate a genuine dispute of fact."); Perry v. Thompson, 786 F.2d 1093, 1094 (11th Cir. 1986) ("Where plaintiff has presented specific facts to the trial court, in sworn form, the court may not . . . grant summary judgment against plaintiff on the procedural ground that he did  not  controvert  the  factual  affidavits  that  controverted  his  sworn  factual statements.").   Otherwise,  Defendants'  statement  of  material  facts  are  deemed

---

23] and exhibits [id. at 24-81; Doc. 19-1 at 1-20].  The exhibits include an unsworn affidavit by Plaintiff [Doc. 19 at 25-37] and two unsworn affidavits by fellow prisoners [id. at 62-72].

admitted based on Plaintiff's failure to file a response in compliance with the Court's local rules.  See LR 56.1(B)(2)(a)(2).

The Fourth Amendment does not allow the use of excessive force against an arrestee.  Patel v. City of Madison, _ F.3d _, _, No. 18-12061, 2020 WL 2745533, at **6-7 (11th Cir. May 27, 2020).  Excessive force under the Fourth Amendment is analyzed under a reasonableness standard, on consideration of "(1) the severity of the crime; (2) whether the individual 'pose[d] an immediate threat to the safety of the officers or others'; and (3) whether the individual 'actively resist[ed] arrest or attempt[ed] to evade arrest by flight.'"  Id. at 7 (alterations in original) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).  The Court also has considered "(4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury."  Id.  The Eleventh Circuit's pattern jury instruction 5.4 sets out what must be proven at trial to succeed on an excessive force claim under the Fourth Amendment –

> To succeed on this claim, [name of plaintiff] must prove each of the following facts by a preponderance of the evidence:
>
> First: That [name of defendant] intentionally committed acts that violated [name of plaintiff]'s constitutional right not to be subjected to excessive or unreasonable force [during an arrest] . . . ;

18

Second: That [name of defendant]'s conduct caused [name of plaintiff]'s injuries; and

Third: That [name of defendant] acted under color of law. . . .

[For the first element, [name of plaintiff] claims that [name of defendant] used excessive force when arresting [him/her]. When making a lawful arrest, an officer has the right to use reasonably necessary force to complete the arrest. Whether a specific use of force is excessive or unreasonable depends on factors such as the crime's severity, whether a suspect poses an immediate violent threat to others, whether the suspect resists or flees, the need for application of force, the relationship between the need for force and the amount of force used, and the extent of the injury inflicted.

You must decide whether the force [name of defendant] used in making the arrest was excessive or unreasonable based on the degree of force a reasonable and prudent law enforcement officer would have applied in making the arrest under the same circumstances. [Name of defendant]'s underlying intent or motivation is irrelevant.]

For the second element, [name of defendant]'s conduct caused [name of plaintiff]'s injuries if [name of plaintiff] would not have been injured without [name of defendant]'s conduct, and the injuries were a reasonably foreseeable consequence of [name of defendant]'s conduct.

Eleventh Circuit Pattern Jury Instructions (Civil Cases), No. 5.4 (2020).

When an arrestee is not resisting but is not fully secured, some force, even if unnecessary, is permissible, but gratuitous violence generally is not. See Sebastian v. Ortiz, 918 F.3d 1301, 1310 (11th Cir. 2019) ("Our case law establishes that 'gratuitous use of force when a criminal suspect is not resisting arrest' may constitute

excessive force." (quoting <u>Hadley v. Gutierrez</u>, 526 F.3d 1324, 1330 (11th Cir. 2008)); <u>Horn v. Barron</u>, 720 F. App'x 557, 564 (11th Cir. 2018) (finding that it was not unlawful when an officer arrested totally compliant arrestee using some force, even if unnecessary, i.e., "a soft hands, straight arm bar takedown technique, by which he gained control of her by taking hold of her left arm, putting his right arm over her left arm, and using gravity and his own weight to bring her to the ground").

Here, it is undisputed (1) that Plaintiff experienced a fall from one-and-a-half or two story window immediately before his arrest; (2) that Plaintiff was taken into custody and handcuffed after he was tasered; and (3) that Plaintiff's back was injured. The Court also finds, based on the medical records and Plaintiff's failure to respond and show otherwise, (1) that it is undisputed that Bell did not break Plaintiff's small right finger[12] and (2) that the references to Plaintiff's fall in the medical records indicate that Plaintiff told medical officials that the fall was the cause of his back injury and that the treating doctors considered the fall as the cause of Plaintiff's

---

[12] The medical records state that Plaintiff complained of a laceration to his thumb but do not mention that Plaintiff ever reported that his small right finger had been broken or injured.  [Doc. 17-5 at 3, 5].

injuries.[13]  [Doc. 17-5 at 6 (listing "indication" (the basis for treatment or test) as "Fall, trauma to area, 14-20 foot fall.")].

It remains disputed, however, whether Bell shoved Plaintiff unto the police vehicle although Plaintiff was compliant; tasered Plaintiff in the back after Plaintiff told Bell that he thought Bell had broken his bones; and stated on the police radio that he had pushed Plaintiff "as hard as [he] could" and wanted to take him to a rail road track "to cut him in half."[14]  [Doc. 9 at 3].

---

[13] The statements in Plaintiff's medical history, which refer to the fall as the general cause of Plaintiff's injury (and which do not attribute fault), are not excluded by the rule against hearsay – "A statement that:  (A) is made for – and is reasonably pertinent to – medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."  Fed. R. Evid. 803(4).

[14] The Court does not agree with Defendants that it would be proper to find, at the summary judgment stage, that Bell's actions were reasonable based on *Defendants' version of Bell's actions*.  The Court does not read Local Rule 56.1(B)(2)(a)(2) (deeming facts admitted if non-movant does not properly respond) as a means to disregard a Plaintiff's sworn specific facts or to change a movant's initial burden.  See Adickes v. S. H. Kress & Co., 398 U.S. 144, 161 (1970) ("No defense to an insufficient showing is required." (citation omitted)); Perry, 786 F.2d at 1094 (stating that when "plaintiff has presented specific facts to the trial court, in sworn form, the court may not . . . grant summary judgment against plaintiff on the procedural ground that he did not controvert the factual affidavits that controverted his sworn factual statements").

Notwithstanding the factual disputes that remain, summary judgment in Defendants' favor is warranted. To succeed at trial, Plaintiff would have to show that Bell caused the injuries of which Plaintiff has complained. Although Plaintiff has asserted that Bell's push broke his chest and spine, to succeed at trial, he must be able to establish, not merely assert, that Bell's actions caused the injuries alleged by Plaintiff.[15] As pointed out by Defendants, there is insufficient evidence whereby a jury could find that Bell caused Plaintiff's injuries. Plaintiff has provided nothing in response to show evidentiary support for his assertion that Bell's push broke his chest and spine. Further, it is undisputed that Plaintiff had just fallen the distance of one-and-a-half or two stories and that Plaintiff's medical records list the fall as the indication for his injury. Plaintiff's conclusory and speculative assertion that Bell's actions caused his back to break, without more, is not sufficient to create a jury issue on whether Bell's actions caused Plaintiff's vertebrae fractures. See Holmes v. Hale,

---

[15] Plaintiff has not alleged that Bell's actions exacerbated a recently sustained back injury (sustained from the fall), and the Court does not address such claim, which has not been litigated by the parties. The Court notes, however, that "[w]hat would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." Rodriguez v. Farrell, 280 F.3d 1341, 1353 (11th Cir. 2002).

22

701 F. App'x 751, 755 (11th Cir. 2017) ("Although Holmes asserts that Billings' 'action in concert' with [other] officer . . . caused his [neck] injury, he does not provide any factual content to support that conclusory assertion."); Johnson v. Razden, 564 F. App'x 481, 485 (11th Cir. 2014) (finding plaintiff failed to show genuine issue of material fact with respect to whether biopsy caused certain medical ailments, when only evidence of causation was plaintiff's conclusory assertions and the temporal proximity between the biopsy and the medical ailments); Zellers v. Echevarria, 1:08-CV-2806, 2011 WL 13272664, at *10 (N.D. Ga. May 4, 2011) (finding that plaintiff had presented no evidence to rebut defendants' showing that plaintiff's injuries were caused by his own actions and that "unsupported suspicion that [plaintiff's] injuries were caused by something other than his own actions is insufficient to create an issue of material fact as to whether Defendants acted with actual malice").   Accordingly, it is recommended that Defendant's motion for summary judgment be granted on Plaintiff's claims against Bell.

### 2. **Claims Against Jackson**

#### a. **Plaintiff's Sworn Allegations**

Plaintiff has alleged against Jackson the following facts. [Doc. 9 at 4-5].  After Plaintiff received back surgery, he returned to the Gwinnett County Detention Center

and was met by Jackson.  Jackson approached with a wheelchair and instructed Plaintiff to get out of the car.  When Plaintiff stated that he could not move due to his injuries, Jackson stated that was not what he had been told and told Plaintiff to comply.  Jackson then yanked Plaintiff out of the car and drug him to the wheelchair. Plaintiff felt excruciating pain and cried.  Jackson and another officer picked Plaintiff up and threw him into the wheelchair, at which time Plaintiff felt the screws that had been placed in his back "pop" – which Plaintiff indicates broke his back again.  [Id.]. Plaintiff states that there is a grievance procedure at his place of confinement and states, "I did not is grievance procedure."  [Id. at 2 (uncorrected)].

### b.   **Defendants' Statement of Material Facts**

### 38.

Deputy Jackson did not interact with Plaintiff until on or about May 2, 2016, about a month after the original arrest.  [Jackson Affidavit, ¶ 10].

### 39.

The Deputy was working in the tower at the Jail and he received a call to help aid in a prisoner transport. The call asked that Jackson bring a wheel chair and he did so.  [Id.].

24

40.

Another deputy joined him in meeting the Plaintiff. These years later Deputy Jackson does not recall the name of the third deputy who was also present.  [Jackson Affidavit, ¶ 11].

41.

Deputy Younkers had driven the Plaintiff from the hospital back to the Jail.  The only documentation regarding the transport is from a computer aided dispatch record (CAD).  [Id.].

42.

The document records that Deputy Younkers delivered Plaintiff from Northeast Georgia Hospital back to the Jail. No other incident is recorded in the CAD.  There is no report of injury to Plaintiff recorded in the CAD.

43.

Deputy Jackson himself had [a] medical issue with his back at the time[,] and he did not place Plaintiff in the wheel chair, Deputy Younkers did so. [Jackson Affidavit, ¶ 12].

44.

Once Plaintiff was in the wheel chair he was taken to the medical unit at the Jail not in response to an additional injury but because that was where he was to be delivered. [Id., ¶ 13].

45.

Plaintiff never complained that he was re-injured in the transport until two years later in July, 2018 when he sent letters to the Gwinnett County Police Department Internal Affairs Division. [Exhibit, F].

[Doc. 17-8 at 3-12].[16]

### c.   **Defendants' Argument and Plaintiff's Response**

Defendants argue that Plaintiff's claim against Jackson is barred because Plaintiff admits that he did not file any grievance on the matter.  [Doc. 17-1 at 10]. Defendants also argue that Deputy Younkers, not Jackson, placed Plaintiff in the wheelchair on the day Plaintiff was returned to jail from the hospital; that Plaintiff was taken to medical as a matter of course when he returned from the hospital; that Plaintiff did not complain of any improper force to the medical staff; and that Plaintiff

---

[16] As noted earlier, the records show that (1) on May 15, 2016, Plaintiff was taken to North East Georgia Medical Center to have the surgical site washed out because Plaintiff had purulent drainage from his surgical site when his sutures were removed [17-5 at 7]; (2) on July 7, 2016, Plaintiff was seen at the Gwinnett Medical Center and the CT report showed a displacement of the metallic strut graft and the pedicle screws at the surgical site [id. at 8]; (3) on July 21, 2016, Plaintiff was seen by a physician at Emory Healthcare, who stated that the screws at Plaintiff's surgery site appeared to have pulled out [id.]; and (4) in November 2016, Plaintiff's diagnoses included hardware failure with kyphosis (abnormality of the spine causing excessive curvature), and Plaintiff received additional surgery, which included removal of hardware and spinal fusion [id. at 15].

did not complain to officials about the alleged reinjury until his July 2018 letters. [Id. at 8, 19]. Defendants assert that they are entitled to qualified immunity because Plaintiff fails to show that they violated clearly established federal law. [Id. at 21-24].

In response, Plaintiff states that he did not report the alleged incident because he was kept in isolation and it was hard for him to report and that when he was moved to a different unit (apparently after twenty-three months, which would be in March of 2018), he learned about the grievance procedure. [Doc. 19 at 9-11]. Plaintiff states that he wrote a grievance on June 18, 2018, and cites to Plaintiff's exhibit B, to show that on June 18 and 28, 2018, Plaintiff wrote grievances in regard to Jackson allegedly re-breaking Plaintiff's back. [Id. at 11-12].[17] As to Jackson's alleged use of force, Plaintiff has not responded to Defendants' statement of material facts but has attached

_____

[17] Plaintiffs exhibit B includes copies of various grievances. [Doc. 19 at 39-54]. The earliest grievance – a pre-grievance resolution form – is dated June 18, 2018, more than two years after Plaintiff's initial back surgery and Jackson's alleged use of force of May 2, 2016. Therein, Plaintiff states that Jackson and another officer threw him into the wheelchair when he returned from having surgery and that he felt the screws in his back pop. [Id. at 50].

his own statement of material facts, none of which are supported by any citations to the record.  [Doc. 19-1 at 21-49].

### d.   <u>Law and Recommendation</u>

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. §1997e(a).  To be available, it is necessary that grievance procedures be known or that they could have been discovered with reasonable effort.  <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1323-24 (11th Cir. 2007).

When a grievance procedure is provided for prisoners, "an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  <u>Bryant v. Rich</u>, 530 F.3d 1368, 1372-73 (11th Cir. 2008) (quoting <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1156 (11th Cir. 2005)).  Section 1997e exhaustion is mandatory, and lack of exhaustion requires dismissal.  <u>See</u> <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1286 (11th Cir. 2004) ("A district court must dismiss the suit when it finds that the plaintiff-inmate has not exhausted his administrative remedies.").

Exhaustion of administrative remedies under § 1997e is a matter in abatement that "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Bryant, 530 F.3d at 1374-75 (quoting Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir. 1988)). The Court decides lack of exhaustion in two steps. Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015) (citing Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)).

> First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. . . . Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust.

Id.

Plaintiff stated in his sworn complaint that administrative remedies were available and that he did not pursue them. [Doc. 9 at 2]. In his response, Plaintiff now states that it was hard for him to report a grievance when he was in isolation and that he did not learn of the grievance procedure until approximately March 2018. Based on Plaintiff's response, the Court does not find lack of exhaustion under the first Turner step. To the extent that Plaintiff's response was meant to assert that

administrative grievance procedures were unavailable, it contradicts his own sworn statement that such remedies were available.  Under the second <u>Turner</u> step, the Court does not credit Plaintiff's response, to the extent that it attempts to assert that administrative remedies were unavailable.  Further, even if Plaintiff was unaware of the grievance procedure, there is no indication that the grievance procedure could not have been discovered with reasonable effort.  Additionally, there is no indication that Plaintiff complained of any improper use of force when he was taken to medical upon his return from surgery and there is no indication in Plaintiff's subsequent medical records that Plaintiff reported to medical personnel that he had suffered force by Jackson on May 2 or that Plaintiff's infection, hardware issues, and need for a second surgery were caused by force used on May 2 (or at any other time).  [<u>See</u> Doc. 17-5 at 7, 8, 15].  The record, thus, does not indicate that on May 2, 2016, Plaintiff had a grievance that he was somehow prevented from filing.[18]  The Court finds that

---

[18] Plaintiff's April 2018 grievance, dated after this action was filed and approximately two years after May 2, 2016 alleged use of force, is insufficient to show exhaustion of administrative remedies, which must be exhausted before suit is filed.  <u>See</u> <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000) ("Higginbottom was required [under § 1997e] to exhaust his administrative remedies before filing suit.")

Plaintiff failed to exhaust available grievance procedures for his claim against Jackson and that his claim against Jackson should be dismissed.

## II.   Conclusion

Based on the above,

**IT IS ORDERED** Plaintiff's motion for appointment of counsel, filed with his exhibits, [Doc. 19 at 18-23], is **DENIED** as moot.

**IT IS RECOMMENDED** that Plaintiff's motion for summary judgment [Doc. 19] be **DENIED**, that Defendant's motion for summary judgment [Doc. 17] be **GRANTED**, and that this action and all claims against Defendants be **DISMISSED**.

The Clerk of Court is **DIRECTED** to withdraw the referral to the undersigned Magistrate Judge.

**IT IS SO ORDERED**, **RECOMMENDED**, **and DIRECTED**, this 15th day of June, 2020.

_____

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE