# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Jaime Bernal Gomez,

       Plaintiff,    Case No. 1:18-cv-00963

v.          Michael L. Brown
           United States District Judge
Deputy Sheriff L. Jackson and
Sgt. R. L. Bell,

       Defendants.

_____/

## <u>OPINION & ORDER</u>

Plaintiff Jaime Bernal Gomez, who is proceeding pro se, claims Defendants Deputy Sheriff L. Jackson and Sgt. R. L. Bell used excessive force against him in violation of the U.S. Constitution. (Dkt. 9.) The parties have filed cross-motions for summary judgment. (Dkts. 17; 19.) The Magistrate Judge recommends granting Defendants' motion and denying Plaintiff's motion. (Dkt. 26.) After careful review, the Court adopts some, but not all, of the Magistrate Judge's report and recommendation ("R&R"). The Court agrees that Plaintiff's motion

should be denied.  But the Court believes Defendants' motion should be granted in part and denied in part.

## I.   Background[1]

On April 13, 2016, Plaintiff's mother-in-law called the police.  (Dkt. 17-8 ¶ 9.)  She said Plaintiff stabbed his wife and children, set their house on fire, and jumped out of a second-story window.  (*Id.*)  A few minutes later, someone else called the police and said a Hispanic man was talking to himself loudly in front of a home near Plaintiff's residence.  (*Id.* ¶ 10.) Defendant Bell, a police officer, drove to Plaintiff's house in response to these calls.  (*Id.* ¶¶ 6, 9–10.)

---

[1] The Court's factual recitation is taken largely from Plaintiff's sworn complaint.  *See Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019) ("[S]pecific facts alleged in [a pro se litigant's] sworn complaint can suffice to generate a genuine dispute of fact."); *Dobbins v. Giles*, 451 F. App'x 849, 850 (11th Cir. 2012) ("If an inmate submits a sworn complaint, the factual allegations therein are sufficient for summary judgment purposes, and he need not file a separate affidavit.").  Although substantial evidence contradicts Plaintiff's version of events, a reasonable jury could believe him.  The Court must therefore "accept [his] version of what happened as true." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 n.8 (11th Cir. 1993); *see Sears v. Roberts*, 922 F.3d 1199, 1207–08 (11th Cir. 2019) (accepting plaintiff's story because nothing "definitively established" it was false, and noting "courts routinely and properly deny summary judgment on the basis of a party's sworn testimony"); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (where plaintiff's sworn complaint is contradicted by other evidence, the court cannot make "a credibility choice" in favor of the latter).

When he arrived, he found Plaintiff covered in blood. (*Id.* ¶ 11.) Defendant Bell escorted him back to his police car while Plaintiff tried to explain what had happened. (Dkt. 9 at 3.) Defendant Bell then told Plaintiff to put his hands behind his back. (*Id.*) When Plaintiff complied, Defendant Bell "shoved [him] onto his police car." (*Id.*) Plaintiff felt a severe pain in his back and chest. (*Id.*) He clutched his chest and said, "I think you just broke my bones." (*Id.*) Defendant Bell immediately tased him in the back. (*Id.*) Defendant Bell then asked another officer, D.A. Roman, to tase Plaintiff as well. (*Id.*) Officer Roman did so. (*Id.*) Plaintiff fell to the ground, and the officers handcuffed him. (*Id.*)

Defendant Bell walked Plaintiff to his patrol car, opened the door, and grabbed Plaintiff's right hand with enough force that Plaintiff "cried because of the pain" in his pinkie. (*Id.*) Defendant Bell put him in the car and told him to "shut up." (*Id.*) As they drove away, Defendant Bell told someone over the police radio: "I pushed him as hard as I could and I want to take him to the railroad track to cut him in half." (*Id.*) Plaintiff was eventually taken to Gwinnett County Correctional Facility, where Defendant Jackson worked as a Deputy Sheriff. (*Id.* at 3–4.; Dkt. 17-8 ¶ 7.)

Plaintiff underwent back surgery a couple of weeks later. (Dkts. 9 at 4; 26 at 14 n.8.) After the surgery, the police drove him back to the jail, where he was met by Defendant Jackson. (Dkt. 9 at 4.) Defendant Jackson told him to get out of the car. (*Id.*) Plaintiff said he could not move due to his injuries. (*Id.*) Defendant Jackson then "yanked" Plaintiff out of the car and "dragged" him towards a wheelchair. (*Id.*) Plaintiff "cried because of th[e] excruciating pain." (*Id.*) Defendant Jackson and another officer picked Plaintiff up and "threw" him into the wheelchair. (*Id.*) Plaintiff claims this exacerbated his back injuries. (*Id.* at 4–5.)

Plaintiff filed this lawsuit in March 2018. He asserts excessive force claims against both Defendants pursuant to 42 U.S.C. § 1983. Defendants moved for summary judgment in January 2020. (Dkt. 17.) A couple of weeks later, Plaintiff filed a "Motion for Summary Judgment," which he describes as his "opposition" to Defendants' motion. (Dkt. 19 at 1.) The Magistrate Judge recommends granting Defendants' motion and denying Plaintiff's motion. (Dkt. 26 at 31.) The parties filed no objections to this recommendation.

4

## II.   Legal Standard

### A.   Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if "it might affect the outcome of the suit under the governing law."  *W. Grp. Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 1361.

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  A moving party meets this burden by "showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The movant, however, need not negate the other party's case.  *Id.* at 323.

Once the movant has adequately supported its motion, the nonmoving party then has the burden of showing that summary judgment is improper by coming forward with "specific facts" showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48.

Throughout its analysis, the court must "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

**B.    Magistrate Judge's R&R**

The district court must "conduct[] a plain error review of the portions of the R&R to which neither party offers specific objections and a de novo review of the Magistrate Judge's findings to which [a party] specifically objects." *United States v. McIntosh*, 2019 WL 7184540, at *3 (N.D. Ga. Dec. 26, 2019); *see* 28 U.S.C. § 636(b)(1); *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).  Based on this review, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1). The parties here filed no objections to the Magistrate Judge's R&R.  The Court thus reviews it for plain error.

**III.  Plaintiff's Motion for Summary Judgment**

The Magistrate Judge construed Plaintiff's summary judgment filing as a response rather than a motion.  (Dkt. 26 at 6.)  The Court sees no plain error in that finding.  Plaintiff said his filing was "the opposition" to Defendants' motion.  (Dkt. 19 at 1.)  He filed it at least two weeks after Defendants' motion.  (*See, e.g.*, Dkt. 19-1 at 49.)  It says expressly that "defendants [sic] motion for summary judgment should be denied."  (Dkt.

19 at 13.)   And Plaintiff did not object when the Magistrate Judge characterized it as a response rather than a motion.

To the extent Plaintiff meant his filing to be an independent motion for summary judgment, the Magistrate Judge recommends denying it because Plaintiff failed to "properly inform the Court, with record citations, of the undisputed facts that demonstrate he is entitled to judgment in his favor." (Dkt. 26 at 6.)  The Court sees no plain error in this recommendation either.   Plaintiff did submit a statement of undisputed material facts, but it includes no record citations in violation of Local Rule 56.1.   (Dkt. 19.1 at 23–49); *see* LR 56.1(B)(1), NDGa ("The Court will not consider any fact . . . not supported by a citation to evidence (including page or paragraph number) . . . or . . . set out only in the brief and not in the movant's statement of undisputed facts.").   That precludes summary judgment in his favor.   *See Lumbermen's Underwriting All. v. Blount Int'l, Inc.*, 2007 WL 7603709, at *3 (N.D. Ga. Feb. 5, 2007) ("[Movant], because of its failure to comply with the Local Rules, has not met its initial responsibility of informing the Court of the portions of the record, which it believes demonstrates that no question of

material fact exists. . . .   Accordingly, the Court DENIES [Movant's]

Motion for Summary Judgment.").[2]

## IV.   Defendant Bell's Motion for Summary Judgment

### A.      The Magistrate Judge's R&R

Plaintiff claims Defendant Bell used excessive force against him in

violation of the Fourth Amendment.   Defendant Bell says he did no such

thing and presents significant evidence to substantiate his position.   But,

as already explained, the Court cannot resolve this factual dispute at

summary judgment and, instead, must resolve all reasonable factual

doubts and draw all justifiable inferences in Plaintiff's favor.

"To prevail on a Fourth Amendment excessive-force claim, the

plaintiff must show both that a seizure occurred and the force used was

unreasonable." *Morrison v. City of Atlanta*, 614 F. App'x 445, 447 (11th

Cir. 2015).   "In determining whether someone has been 'seized' for

---

[2] Even if Plaintiff had complied with Local Rule 56.1, genuine issues of
fact clearly preclude summary judgment in his favor.   Defendants have
submitted affidavits and police reports that present an entirely different
version of events.   According to their evidence, Defendants "never laid
hands upon Plaintiff," Plaintiff had a knife, and he was only tased once
(by another officer) when he had failed to comply with the officers'
commands.   (Dkt. 17-8 ¶¶ 6, 11–13.)   If all of that were true, a reasonable
jury could return a verdict in Defendants' favor.

purposes of the Fourth Amendment, the question is whether a reasonable person would feel free to terminate the encounter." *United States v. Graham*, 323 F. App'x 793, 798 (11th Cir. 2009). "To determine whether an officer's force was unreasonable, [courts] consider (1) the severity of the crime; (2) whether the individual posed an immediate threat to the safety of the officers or others; . . . (3) whether the individual actively resisted arrest or attempted to evade arrest by flight[;] . . . . (4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury." *Patel v. City of Madison*, 959 F.3d 1330, 1339 (11th Cir. 2020). Courts "must be careful not to Monday-morning quarterback but instead to judge the 'reasonableness' of a particular use of force from the perspective of a reasonable officer on the scene." *Id.*

Plaintiff says Defendant Bell broke his chest, spine, and right pinkie during his arrest. (Dkt. 9 at 3.) The Magistrate Judge found that no reasonable jury could believe these "conclusory and speculative assertion[s]" because they lack any evidentiary support. (Dkt. 26 at 20–23.) The Court sees no plain error in that finding. *See Johnson v. Razdan*, 564 F. App'x 481, 485 (11th Cir. 2014) ("conclusory assertions"

and "temporal proximity" were insufficient to create a genuine issue as to causation). There is zero evidence that Defendant Bell broke Plaintiff's right pinkie. Plaintiff's post-arrest medical records do mention a laceration to his left thumb but they say nothing about an injury to (much less a fracture of) his right pinkie. (*See* Dkts. 17-5 at 3, 5.) It is also true that Plaintiff received medical care for injuries to his back. But medical records suggest he sustained these injuries when he fell (or jumped) from the second story of his home shortly before his arrest. (*See, e.g.*, Dkt. 17-5 at 4 (listing Plaintiff's "clinical indication" as "jumped 14–20 feet and landed on his chest"), 5 (listing "indication" as "fall from 14–20 feet"), 6 (same), 7 ("He was in his usual state of health until April 2016 when he was involved in a domestic dispute during which he was pushed out of a 1.5 story window by his wife.").)

The Magistrate Judge then concluded that, because "there is insufficient evidence whereby a jury could find Bell caused Plaintiff's injuries," Defendant Bell is entitled to summary judgment on all of Plaintiff's excessive force claims against him. (Dkt. 26 at 22.) For at least two reasons, the Court cannot agree. First, a reasonable jury could find that Defendant Bell's use of force (including his alleged taser

deployment) caused Plaintiff "physical pain and suffering or mental and emotional anguish," even if it did not result in a broken chest, back, or finger. *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000). That is enough to establish a compensable injury under Section 1983. *Id.* ("[C]ompensatory damages may be awarded based on physical pain and suffering [or mental and emotional distress] caused by a defendant's use of excessive force.").

Second, and more fundamentally, an officer need not inflict a compensable injury on a plaintiff to be liable for excessive force under the Fourth Amendment. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1328 n.33 (11th Cir. 2017) ("[I]njury and force are only imperfectly correlated, and it is the latter that ultimately counts."); *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("To conclude that the absence of some arbitrary quantity of injury requires automatic dismissal of an excessive force claim improperly bypasses the core judicial inquiry, which is the nature of the force."); *Slicker*, 215 F.3d at 1231–32 ("[A] § 1983 plaintiff alleging excessive use of force is entitled to nominal damages even if he

fails to present evidence of compensable injury.").[3]  He need only "seize" the plaintiff and use unreasonable force against him.  *See Corbitt v. Vickers*, 929 F.3d 1304, 1315 (11th Cir. 2019) ("To establish a Fourth Amendment claim for excessive force, a plaintiff must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable."); *Morrison*, 614 F. App'x at 447 (same in summary judgment context).  If "a jury reasonably concludes that the plaintiff's evidence of injury is not credible," "nominal damages may be appropriate" — but that does not preclude a finding of liability.  *Slicker*, 215 F.3d at 1232.

The fact that Defendant Bell did not break Plaintiff's bones does not entitle him to summary judgment here.  The Magistrate Judge was wrong to suggest otherwise.  That does not end the discussion, however.

---

[3] *See also J.B. ex rel. Brown v. Amerson*, 519 F. App'x 613, 617 n.5 (11th Cir. 2013) ("[D]e minimis injuries are not necessarily dispositive of an excessive force claim."); *Velius v. Twp. of Hamilton*, 466 F. App'x 133, 137 (3d Cir. 2012) ("[E]xcessive force need not cause injury to be actionable under the Fourth Amendment."); *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011) ("[I]t is logically possible to prove an excessive use of *force* that caused only a minor *injury*."); *Bullard v. Gonzalez*, 2015 WL 13831711, at *8 (S.D. Fla. Aug. 31, 2015) (collecting cases for the proposition that "[a]ny de minimis nature of a plaintiff's injury does not foreclose the possibility of his entitlement to relief").

The Court must still consider whether Defendant Bell is entitled to summary judgment based on the qualified immunity doctrine. Defendant Bell says he is, but the Magistrate Judge never reached that argument. (*See* Dkt. 17-1 at 21–24.)  The Court does so now.

## B.   Legal Standard for Qualified Immunity

"Section 1983 allows persons to sue individuals or municipalities acting under the color of state law for violations of federal law." *Hill v. Cundiff*, 797 F.3d 948, 976 (11th Cir. 2015).[4]  "When defending against a § 1983 claim, a government official may assert the defense of qualified immunity." *Moore v. Sheriff of Seminole Cty.*, 748 F. App'x 229, 232 (11th Cir. 2018).  An official asserting this defense must show that he "engaged in a discretionary function when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).  The burden then "shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.*  This

---

[4] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] suit in equity . . . ." 42 U.S.C. § 1983.

requires the plaintiff to show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* The plaintiff's two-part burden need not be "analyzed sequentially; if the law was not clearly established, [the court] need not decide if the Defendants actually violated the Plaintiff's rights." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

To establish a violation of clearly established law, a plaintiff must show "the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that every reasonable official would have understood that what he is doing violates the Constitutional right at issue." *Gates v. Khokhar*, 884 F.3d 1290, 1302 (11th Cir. 2018). "The critical inquiry is whether the law provided the [officials] with fair warning that their conduct violated the Fourth Amendment." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). "Fair warning is most commonly provided by materially similar [binding] precedent from the Supreme Court, [the Eleventh Circuit], or the highest state court in which the case arose." *Gates*, 884 F.3d at 1296; *see J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 n.1 (11th Cir. 2018) (only binding cases can create clearly established law).

15

If the plaintiff cannot point to a materially similar binding precedent, he can establish fair warning only if the defendant's conduct violated federal law "as a matter of obvious clarity." *Id.* at 1014; *see Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017). This requires the plaintiff to show that (1) "the words of the federal statute or constitutional provision at issue are so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful," or (2) "the case law that does exist is so clear and broad (and not tied to particularized facts) that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Gaines*, 871 F.3d at 1209; *see Gates*, 884 F.3d at 1296–97 ("Authoritative judicial decisions may establish broad principles of law that are clearly applicable to the conduct at issue," or "it may be obvious from explicit statutory or constitutional statements that conduct is unconstitutional").

## C. Whether Defendant Bell is Entitled to Qualified Immunity

Defendant Bell, a police officer, was engaged in a discretionary function when he arrested and allegedly mistreated Plaintiff. *See Holloman*, 370 F.3d at 1266 (noting that, "in an excessive force suit, there

can be no doubt that the police officer defendant was acting in his discretionary capacity when he arrested plaintiff"). The burden thus shifts to Plaintiff to show that Defendant Bell used excessive force in violation of clearly established law. Defendant Bell "seized" Plaintiff when he arrested him. *See Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) ("[A]n arrest is a seizure of the person."). So, the only question is whether a jury could find that Defendant Bell used unreasonable force to effectuate that seizure — and, if so, whether "the law clearly barred [him] from applying the force he did." *Patel*, 959 F.3d at 1342.

There are three alleged uses of force at issue here: Defendant Bell (1) shoved Plaintiff against a police car, (2) tased him, and (3) grabbed his hand while placing him in the car. The Court considers each.[5]

---

[5] Plaintiff was also tased by Officer Roman. Defendant Bell could potentially be liable for that force under a supervisory or failure-to-intervene theory. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (describing failure-to-intervene theory); *Goebert v. Lee Cty.*, 510 F.3d 1312, 1331 (11th Cir. 2007) (describing supervisory theory). But neither the parties nor the Magistrate Judge have clearly addressed either theory at any point in this litigation. And the Court declines to do so uninvited. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments."). It is doubtful, however, that Plaintiff plausibly

17

## 1.   Defendant Bell's Shove and Hand-Grab

"The application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Sebastian v. Ortiz*, 918 F.3d 1301, 1308 (11th Cir. 2019); *see Jackson v. McCurry*, 762 F. App'x 919, 933 (11th Cir. 2019) ("[D]e minimis force will only support a Fourth Amendment excessive force claim when an arresting officer does not have the right to make an arrest."). That is true even if the de minimis force is unnecessary. *See Taylor v. Taylor*, 649 F. App'x 737, 746 (11th Cir. 2016) ("[D]e minimis force, even when it is unnecessary, is not unlawful."). The Eleventh Circuit has repeatedly held that pushes, shoves, and grabs (and the like) fall into the category of de minimis force and are insufficient to overcome qualified immunity. *See Gomez v. United States*, 601 F. App'x 841, 850 (11th Cir. 2015) ("This Court has held that a variety of physical force techniques used by police on unhandcuffed individuals constituted de minimis force that

---

asserted either theory in his complaint. He does not allege that Defendant Bell supervised Officer Roman as required for supervisory liability. (*See* Dkt. 9.) And the Court previously dismissed all claims other than Plaintiff's "excessive force" claims (focusing on the shove, the first tase, and the hand-grab). (Dkts. 10 at 7–8; 12 at 2.) "[A] failure to intervene claim is [not] implicit in an excessive force claim." *Calvi v. Knox Cty.*, 470 F.3d 422, 431 (1st Cir. 2006).

does not rise to excessive force that could violate the Fourth Amendment."). This bars Plaintiff's shove and hand-grab claims.

In *Jones v. City of Dothan*, 121 F.3d 1456 (11th Cir. 1997), for example, two police officers escorted the plaintiff (who was accused of harassing a woman) out of a restaurant. *Id.* at 1458. As they walked, the plaintiff said he had not done anything wrong, had previously suffered a stroke, and was currently taking medication. *Id.* But he did not physically resist, try to escape, or pose an obvious immediate threat. *Id.* Once outside, the officers "slammed [him] against a wall, kicked his legs apart, required him to raise his arms above his head, and pulled his wallet from his pants." *Id.* "In the process, his pants were torn and the wallet contents were scattered on the ground." *Id.* Plaintiff "experienced pain" during the incident and required "minor medical treatment" a few days later. *Id.* at 1460. The Eleventh Circuit found the officers were protected by qualified immunity because "application of the excessive force standard would not inevitably lead an official in [their] position to conclude that the force was unlawful." *Id.* at 1460–61. The court explained that "[w]hile use of force against [plaintiff] may have been

unnecessary, the actual force used and the injury inflicted were both minor in nature." *Id.* at 1460.

In *Post*, "the officer, who sought to arrest the plaintiff for a building code violation, pushed the plaintiff against a [display case] and applied a choke-hold before placing the plaintiff in handcuffs—all despite the fact that the plaintiff did not resist" and had his hands up. *Nolin v. Isbell*, 207 F.3d 1253, 1256 (11th Cir. 2000) (summarizing *Post*, 7 F.3d 1552). The officer then took plaintiff outside and pushed him against a wall. *Post*, 7 F.3d at 1556. The court found the officer was entitled to qualified immunity because it was "not plain" that "the amount of force [he] used, even if unnecessary, was enough to violate the law." *Id.* at 1560.

In *Nolin*, an officer saw plaintiff (who was 17 years old) "roughhousing" with a friend. 207 F.3d at 1254. After the wrestling stopped and plaintiff started walking back to work, the officer "grabbed [him] from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him." *Id.* at 1254–55. Plaintiff did not resist. *See id.* at 1255; *Nolin v. Town of Springville*, 45 F. Supp. 2d 894, 898 (N.D. Ala.

1999).  The court held the officer was protected by qualified immunity. *Nolin*, 207 F.3d at 1258.  Although plaintiff "suffered bruising to his forehead, chest, and wrists," the court found that the officer used "de minimis force" and that "the facts sound little different from the minimal amount of force and injury involved in a typical arrest." *Id.* at 1255, 1258 n.4.  The court emphasized that "a minimal amount of force and injury, as present in the facts of this case, will not defeat an officer's qualified immunity in an excessive force case." *Id.* at 1258.

Finally, in *Taylor*, plaintiff (a woman) allegedly made harassing and threatening calls to another woman.  649 F. App'x at 739–40.  The officer confronted plaintiff in the parking lot of a convenience store. *Id.* at 740.  She denied making the calls but did not physically resist arrest, try to escape, or pose an obvious immediate threat. *See id.* at 740–41. The officer nonetheless "grabbed [her] without warning, slammed her against a patrol car several feet away, causing her head to hit the car first, and then handcuffed her." *Id.* at 746.  Plaintiff "suffered a spiral fracture in her hand and bruising to her hand, forearm, right upper eyelid, and chest." *Id.*  Although the court expressed "concerns about the necessity of the force used in this instance and the general way in which

[the officer] handled the encounter," the court characterized the force as "de minimis" and upheld qualified immunity.  *Id.* at 747.[6]

These cases yield a clear result here: Defendant Bell is entitled to qualified immunity for allegedly shoving Plaintiff into the car and grabbing his hand.  As in all four cases, (1) the officer here grabbed and shoved Plaintiff during the arrest; (2) Plaintiff was not resisting or trying to escape; and (3) there is no cognizable evidence that the officer's conduct caused Plaintiff any serious injury.  An aggravating feature in this case is that Plaintiff had just stabbed his family and thus was potentially violent.  If qualified immunity was appropriate in *Jones*, *Post*, *Nolin*, and *Taylor*, it is appropriate here.  Even accepting Plaintiff's allegations that

---

[6] *See also Myers v. Bowman*, 713 F.3d 1319, 1325, 1328 (11th Cir. 2013) (officer used de minimis force when he "grabbed Dustin by the arm, forced him to the ground, placed him in handcuffs, and searched him," even though this caused "injuries to [Dustin's] head, left wrist, left forearm, neck, and knees"); *Croom v. Balkwill*, 645 F.3d 1240, 1251-52 (11th Cir. 2011) (officer used unnecessary but de minimis force when she pushed an elderly woman, who had arthritis, to the ground and placed a foot or knee on her back for ten minutes); *Bryan v. Spillman*, 217 F. App'x 882, 886 (11th Cir. 2007) (officer used de minimis force when he "conducted a rough search of [plaintiff's] genitals, pushed him against a patrol car and held his head down against the car").

Defendant Bell pushed him and grabbed his hand during the arrest, Defendant Bell is entitled to qualified immunity.[7]

### 2.   Defendant Bell's Taser Deployment

Defendant Bell's taser deployment is a different story.  A taser is a weapon and using it against a suspect is not the same as pushing, shoving, or grabbing him.  The latter sort of bodily contact is the quintessential example of de minimis force because it is part of "a typical arrest."  *Nolin*, 207 F.3d at 1258 n.4.  Not so for the discharge of a taser.  *See Fils*, 647 F.3d at 1288 (officer used excessive force when he tased a compliant suspect); *see also Bratt v. Genovese*, 2015 WL 12835684, at *6 n.8 (M.D. Fla. Nov. 23, 2015) ("The Court disagrees with George's position that the use of a taser constitutes only the application of de minimis force."); *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1251

---

[7] To the extent the de minimis rule applies with less force to the hand-grab because Plaintiff was already in handcuffs by then, Defendant Bell is still entitled to qualified immunity for that physical contact.  The only cognizable evidence about the incident is that (1) Defendant Bell "graved [sic] and held" Plaintiff's right hand as he put him in the police car, and (2) Plaintiff "cried because of the pain."  That is not enough to overcome qualified immunity or summary judgment, especially since there is no cognizable evidence of any damage to the finger that Plaintiff claims was hurt.

(M.D. Ala. 2010) ("[T]he court rejects Officer Schulmerich's additional argument that summary judgment is proper because his use of a taser to drive stun Ms. Borton constituted de minimis force.").[8]

"Viewing the evidence and all factual inferences in the light most favorable to the plaintiff[]," as the Court must, Defendant Bell tased Plaintiff after (1) they walked back to the police car together without incident, (2) Plaintiff was no longer armed, (3) Plaintiff was cooperating and put his hands behind his back at Defendant Bell's request, and (4) Defendant Bell successfully placed Plaintiff against the car. *Smith v. LePage*, 834 F.3d 1285, 1295 (11th Cir. 2016). "The facts as we must accept them show that [Plaintiff] showed no hostility to [Defendant Bell], did not disobey any orders, and did not make any menacing gestures." *Fils*, 647 F.3d at 1292. "Assuming these facts, no reasonable officer could ever believe that it was appropriate to shoot his taser probes into

---

[8] *See also Gonzalez-Torres v. Buswell*, 2014 WL 1272754, at *12–14 (M.D. Fla. Mar. 27, 2014) (rejecting defendants' argument that "even if Plaintiff was placed in a choke hold and tased, the force was de minimis and therefore constitutional"); *Maiorano ex rel. Maiorano v. Santiago*, 2005 WL 1200882, at *6 (M.D. Fla. May 19, 2005) ("[T]he Court cannot find that the single application of a taser under the allegations of the Amended Complaint in this particular case is the type of de minimis force contemplated by the Eleventh Circuit.").

[Plaintiff] and shock him.  This line is not hazy, and [Defendant Bell's] actions were clearly wrong."  *Id.*  Qualified immunity is thus inappropriate.  *See Patel*, 959 F.3d at 1339, 1343 (no qualified immunity where "Patel was not resisting and was complying with the officers' commands when [they] executed the swift and decisive leg sweep"); *DeGiovanni*, 852 F.3d at 1326 (no qualified immunity where "forceful chest blows" and "throwing [plaintiff] against the car-door jamb" were "unnecessary for a compliant, nonaggressive arrestee"); *Hadley*, 526 F.3d at 1330 (noting that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force," and denying qualified immunity to an officer who punched a handcuffed, compliant suspect once in the stomach).

### 3.  Conclusion

Defendant Bell is entitled to qualified immunity and summary judgment on Plaintiff's claim that Defendant Bell grabbed his hand and shoved him against a car in violation of the Fourth Amendment.  But Plaintiff's excessive force claim based on the taser incident is allowed to proceed, and Defendant Bell's motion for summary judgment on that claim is denied.

25

## V.    Defendant Jackson's Motion for Summary Judgment

Plaintiff claims Defendant Jackson, a jail official, used excessive force against him at the Gwinnett County Correctional Facility. Defendant Jackson says Plaintiff's claim is barred because he failed to exhaust his administrative remedies before filing this lawsuit.[9]

### A.    Legal Standard

The Prisoner Litigation Reform Act ("PLRA") "requires prisoners who wish to challenge some aspect of prison life, including claims of excessive force, to exhaust all available administrative remedies before

---

[9] There may be an argument that Defendant Jackson cannot raise the exhaustion defense at this stage of the litigation.  The argument would be that (1) courts "treat an exhaustion defense raised in a motion for summary judgment as an unenumerated Rule 12(b) motion to dismiss," *Maldonado v. Unnamed Defendant*, 648 F. App'x 939, 951 (11th Cir. 2016); (2) "the exhaustion defense is [thus] subject to the rules and practices applicable to the most analogous Rule 12(b) motion," *Brooks v. Warden*, 706 F. App'x 965, 968 (11th Cir. 2017); (3) Rule 12(b) says "[a] motion asserting any of these defenses must be made *before* pleading"; and (4) Defendant Jackson now asserts the exhaustion defense in a *post*-answer (i.e., post-pleading) motion.  The Court declines to rule against Defendant Jackson on this issue, however, because (1) neither the parties nor the Magistrate Judge raised it; (2) it appears the Eleventh Circuit has not addressed it directly; and (3) the Eleventh Circuit routinely affirms orders granting post-answer motions to dismiss (styled as motions for summary judgment) for lack of exhaustion.  *See, e.g.*, *Maldonado*, 648 F. App'x at 951–54; *Wright v. Langford*, 562 F. App'x 769, 775 (11th Cir. 2014); *Trias v. Fla. Dep't of Corr.*, 587 F. App'x 531, 535 (11th Cir. 2014); *Yisrael v. Gil*, 461 F. App'x 911, 912 (11th Cir. 2012).

resorting to the courts." *White v. Staten*, 672 F. App'x 919, 923 (11th Cir. 2016) (citing 42 U.S.C. § 1997e(a)).   An administrative remedy is "available" if it is "capable of use to obtain some relief for the action complained of." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016); *see Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (remedy must be "capable of use for the accomplishment of its purpose").   A remedy is unavailable if "it operates as a simple dead end," it is "so opaque that it becomes, practically speaking, incapable of use," or "prison administrators thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Wright v. Brown*, 2020 WL 3027225, at *5 (11th Cir. June 5, 2020); *see Turner*, 541 F.3d at 1084 ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.").   "Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court." *White*, 672 F. App'x at 923.

"Deciding whether an inmate exhausted administrative remedies entails a two-step process." *Langford*, 562 F. App'x at 775.   "First, the court looks to the factual allegations in the defendant's motion and those in the plaintiff's response, and if they conflict, takes the plaintiff's

versions of the facts as true." *Id.* "If, taking the plaintiff's facts as true, the defendant is entitled to dismissal for failure to exhaust, then the complaint should be dismissed." *Id.* "If the complaint is not subject to dismissal at the first step, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* "The defendant bears the burden of proof during this second step." *Id.* "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the plaintiff has exhausted his available administrative remedies." *Id.*

## B.    Discussion

The Magistrate Judge found, at the second step of the analysis, that administrative procedures were available to Plaintiff but that he failed to use them to complain about Defendant Jackson's conduct until after this lawsuit was filed. (Dkt. 26 at 28–31.) The Magistrate Judge thus recommends dismissing Plaintiff's claim against Defendant Jackson for failure to exhaust his administrative remedies. (*Id.*) The Court sees no plain error in that recommendation.

As Defendant Jackson points out, Plaintiff testified in his sworn complaint that the jail has "a prisoner grievance procedure" and that

Plaintiff failed to use it before filing this lawsuit.  (Dkts. 9 at 2; 17-1 at 10.)   That satisfies Defendant Jackson's burden "of proving that the plaintiff has failed to exhaust his available administrative remedies," which includes showing that "a remedy is *generally* available (i.e., a grievance procedure exists)."   *Wright v. Ga. Dep't of Corr.*, 2020 WL 3469079, at *3 (11th Cir. June 25, 2020) (emphasis added).  The burden thus shifts to Plaintiff to show "that the general remedy was effectively unavailable to him."  *Id.*  Plaintiff has not met that burden.

He says he "*might* have not wrote [sic] a grievance at the time because he did not know such a procedure existed and was kept in isolation for 23 twenty-three [sic] months but once they moved him to another unit other [sic] inmate told Plaintiff about the grievance procedure.  The Plaintiff then wrote a grievance on Deputy L. Jackson on 6-18-2018."   (Dkt. 19 at 10–11 (emphasis added).)[10]   Plaintiff's speculation about what "might" explain his lack of exhaustion is insufficient.  So too is his claim that he "did not know [an administrative]

---

[10] Plaintiff's June 2018 grievance came months after he filed this lawsuit and is thus insufficient to establish exhaustion. (*See* Dkt. 26 at 30 n.18); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) ("Higginbottom was required to exhaust his administrative remedies before filing suit.").

procedure existed." Even if that were true, he must also show the procedure "could not have been discovered through reasonable effort." *Goebert*, 510 F.3d at 1324. He has not done that. Nor does he offer any factual support for his apparent claim that (1) he was isolated for 23 consecutive months immediately after the incident with Defendant Jackson, and (2) this isolation prevented him from pursuing administrative remedies. *See Wright*, 2020 WL 3469079, at *3 (prisoner "failed to show that the remedy was effectively unavailable to him" because "he provided no factual support for []his assertion" that "the grievance process was an unavailable dead end because the wardens had never approved an inmate grievance involving medical treatment").[11]

---

[11] Plaintiff also criticizes the jail's handling of the administrative complaints he eventually filed in June 2018 and in the months that followed — but these criticisms do not explain or excuse the untimeliness of his complaints in the first place. (Dkt. 19 at 11–13.) Nor are they detailed and serious enough to show that the jail's administrative procedures "operate[] as a simple dead end—with officers unable or consistently unwilling to provide any relief." *Brown*, 2020 WL 3027225, at *5. That is a high bar and "will not often arise." *Ross*, 136 S. Ct. at 1859. "[T]he exhaustion requirement cannot be waived based upon the prisoner's [mere] belief that pursuing administrative procedures would be futile." *Myles v. Green*, 557 F. App'x 901, 903–04 (11th Cir. 2014).

The bottom line is that Plaintiff failed to exhaust his administrative remedies against Defendant Jackson before filing this lawsuit. The Court thus dismisses Plaintiff's claims against Defendant Jackson for failure to comply with the PLRA's exhaustion requirement.[12]

## VI.  Conclusion

The Magistrate Judge's Final Report and Recommendation (Dkt. 26) is **ADOPTED IN PART** and **REJECTED IN PART**. It is adopted (as modified and supplemented herein) except to the extent it recommends granting summary judgment on Plaintiff's excessive force

---

[12] The parties and the Magistrate Judge appear to assume that Plaintiff is suing Defendants in their individual capacities only. The Court assumes they are right. *See Lundgren v. McDaniel*, 814 F.2d 600, 604 (11th Cir. 1987) ("[t]he course of proceedings . . . typically will indicate" "whether officials are being sued personally, in their official capacities, or both."). Even if they are not, any official capacity claims fail on the merits here because no reasonable jury could find that Plaintiff suffered the "deprivation of a constitutional right result[ing] from: (1) an action taken or policy made by an official responsible for making final policy in that area of the County's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Lloyd v. Van Tassell*, 318 F. App'x 755, 760 (11th Cir. 2009); *see Wilk v. St. Lucie Cty. Fla. Sheriff Office*, 740 F. App'x 658, 663 (11th Cir. 2018) (affirming dismissal of official capacity claims for failure to show "that the officers' violations of [plaintiff's] rights were attributable to any official custom or policy").

claim that Defendant Bell tased him in violation of the Fourth Amendment.

Plaintiff's Motion for Summary Judgment (Dkt. 19) is **DENIED**, and Defendants' Motion for Summary Judgment (Dkt. 17) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is granted except to the extent it seeks summary judgment on Plaintiff's excessive force claim that Defendant Bell tased him in violation of the Fourth Amendment. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's excessive force claims against Defendant Jackson for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).[13]

**SO ORDERED** this 20th day of July, 2020.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[13] This "dismissal" language reflects the fact that "exhaustion of administrative remedies is . . . not generally an adjudication on the merits," "is not ordinarily the proper subject for a summary judgment," and "instead . . . should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008).